UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NOV 13 2025 PM 4:06
FILED - USDC - FLMD - TPA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CASE NO. 8:25-cr-530-CEH-LSG |
| HON NING HO,<br>  a/k/a "Mathew Ho,"<br>BRIAN CURTIS RAYMOND,<br>CHAM LI,<br>  a/k/a "Tony Li," and<br>JING CHEN,<br>  a/k/a "Harry Chen" | 50 U.S.C. § 4819<br>(Conspiracy to Violate and Violations of Export Control Reform Act)<br>18 U.S.C. § 554<br>(Smuggling)<br>18 U.S.C. § 1956(h)<br>(Conspiracy to Commit Money Laundering)<br>18 U.S.C. § 1956(a)(2)<br>(Money Laundering) |

**INDICTMENT**



The Grand Jury charges:

**COUNT 1**
(Conspiracy to Violate Export Control Reform Act of 2018)
(50 U.S.C. § 4819)

### A. Introduction

At times material to this Indictment:

1. Janford Realtor, LLC, was a Limited Liability Company registered in Florida in March 2023. The registered address of Janford Realtor, LLC, was in Tampa, Florida. Despite its name, Janford Realtor, LLC was never involved in any real estate transactions. Instead, the company served as an intermediary for several unlawful and unlicensed exports to the People's Republic of China ("PRC") of

advanced and highly-controlled U.S.-origin Graphics Processing Units ("GPUs") with artificial intelligence ("AI") and supercomputing applications.

2. Defendant HON NING HO, a/k/a "Mathew Ho," was a United States citizen residing in Tampa, Florida, who was born in Hong Kong. HO was the registered agent of Janford Realtor, LLC and identified as a manager of Janford Realtor, LLC in the Florida registration paperwork.

3. Defendant CHAM LI, a/k/a "Tony Li," was a Chinese national residing in California. LI was also identified as a manager of Janford Realtor, LLC in the Florida registration paperwork.

4. U.S. Company 1 was a distributor of U.S. technology products based in Huntsville, Alabama. U.S. Company 1 was licensed to sell NVIDIA GPUs, among other products.

5. Defendant BRIAN CURTIS RAYMOND was a United States citizen residing in Huntsville, Alabama. RAYMOND was the Chief Executive Officer and sole owner of U.S. Company 1.

6. Chinese Company 1 was a Chinese company registered in Hong Kong.

7. Defendant JING CHEN, a/k/a "Harry Chen," was a Chinese national who entered the United States on an F-1 nonimmigrant student visa and was residing in Tampa, Florida.

8. Chinese Company 2 was a Chinese company registered in Hong Kong.

## B. Relevant Statutory and Legal Background
## The Export Control Reform Act and Export Administration Regulations

9. The Export Control Reform Act ("ECRA") provides, among other things, that the national security and foreign policy of the United States require that the export, reexport, and in-country transfer of items be controlled, 50 U.S.C. § 4811, and grants the President the authority to control such activities, 50 U.S.C. § 4812. ECRA further grants to the Secretary of Commerce the authority to establish the applicable regulatory framework. 50 U.S.C. § 4813.

10. The Export Administration Regulations ("EAR"), 15 C.F.R. Parts 730-774, restricts the export of items for national security, foreign policy, and other interests of the United States as reflected in international obligations and arrangements. 15 C.F.R. § 730.6. It also restricts exports of items that could make significant contributions to the military potential of other nations or that could be detrimental to the foreign policy or national security of the United States. Id. § 742.4. The EAR imposes licensing and other requirements for items subject to the EAR to be lawfully exported from the United States or lawfully reexported from one foreign destination to another. Id. § 730.7.

11. The most sensitive items subject to EAR controls are identified on the Commerce Control List ("CCL"), published at Title 15, Code of Federal Regulations, Part 774, Supplement Number 1. Items on the CCL are categorized by an Export Control Classification Number ("ECCN") based on their technical

characteristics. Each ECCN has export control requirements depending on the destination, end user, and end use.

12.  The PRC is rapidly developing exascale supercomputing capabilities and has announced its intent to become the world leader in AI by 2030. These capabilities are being used by the PRC for its military modernization efforts and in connection with the PRC's weapons design and testing, including for weapons of mass destruction, as well as in connection with the PRC's development and deployment of advanced AI surveillance tools. Interim Final Rule, Implementation of Additional Export Controls: Certain Advanced Computing and Semiconductor Manufacturing Items; Supercomputer and Semiconductor End Use; Entity List Modification, 87 Fed. Reg. 62186 (effective Oct. 7, 2022).

13.  To protect United States national security and foreign policy interests, beginning on October 7, 2022, BIS amended the EAR to implement new controls on the export of advanced computing integrated circuits ("ICs"), computer commodities that contain ICs, and certain semiconductor manufacturing items. See id. Among other things, these restrictions imposed a licensing requirement for exports, reexports, and transfers (in-country) to or within the PRC (including Hong Kong) for items classified on the CCL under ECCN 4A090, as well as associated software and technology. Id.; see also 15 C.F.R. § 742.6(a)(6).

14.  At all times relevant to this indictment, NVIDIA A100 Graphics Processing Units ("GPUs"), H100 and H200 GPUs, and PNY GE Force RTX 4090

4

GPUs were classified on the CCL under ECCN 4A090.a. Therefore, these items required a license for export or reexport to the PRC (including Hong Kong).

15.  At no time relevant to this Indictment did HO, RAYMOND, LI, CHEN, their conspirators, or any of their companies apply for, receive, or possess a license from BIS to export or reexport any items classified on the CCL, including items classified as ECCN 4A090.a, to the PRC (including Hong Kong), Malaysia, or Thailand.

## Export and Shipping Records

16.  Pursuant to U.S. law and regulations, exporters or their authorized agents, such as shippers or freight forwarders, are required to file certain forms and declarations concerning the export of goods and technology from the United States. Typically, those documents are filed electronically through the Automated Export System ("AES"), which is administered by the U.S. Department of Homeland Security, Customs, and Border Protection ("CBP").

17.  The Electronic Export Information ("EEI") (formerly known as the Shipper's Export Declaration) is the required documentation submitted to the U.S. Government through the AES in connection with an export shipment from the United States. Exporters or their authorized agents are required to file accurate and truthful EEI for every export of goods from the United States with a value of $2,500 or more. The EEI is also required regardless of the value of the goods if the goods require an export license. 15 C.F.R. §§ 30.2, 758.1.

18. The purpose of these requirements is to strengthen the U.S. Government's ability to prevent the export of certain items to unauthorized destinations and end users because the EEI and AES aid in targeting, identifying, and when necessary, confiscating suspicious or illegal shipments prior to export. 15 C.F.R. § 30.1(b).

19. In addition, the BIS-711 Form, titled "Statement by Ultimate Consignee and Purchaser," is a form submitted to the Department of Commerce by exporters, shippers, and freight forwarders that requires the identification of the end user and end use of goods to be exported from the United States. See 15 C.F.R. § 748.11. The BIS-711 Form seeks assurances from the ultimate consignee and purchaser that the items will not be misused, transferred, or reexported in violation of the EAR. The BIS-711 Form requires the ultimate consignee and purchaser to certify, among other things, that all of the facts contained in the form are true and correct and to acknowledge that the making of any false statements or concealment of any material fact in connection with the form may result in imprisonment or fine, or both, and denial, in whole or in part, of participation in U.S. exports and reexports.

20. A material part of the EEI and AES, as well as other export filings, including the BIS-711 Form, is information concerning the end user and ultimate destination of the export. The identity of the end user may determine whether the goods: (a) may be exported without any specific authorization or license from the

U.S. Government; (b) may be exported with the specific authorization or license from the U.S. Government; or (c) may not be exported from the United States.

### B. The Conspiracy

21. Beginning in or around September 2023, the exact date being unknown to the Grand Jury, and continuing until in or around the date of this Indictment, in the Middle District of Florida, and elsewhere, the defendants,

**HON NING HO,**
**a/k/a "Mathew Ho,"**
**BRIAN CURTIS RAYMOND,**
**CHAM LI,**
**a/k/a "Tony Li," and**
**JING CHEN,**
**a/k/a "Harry Chen,"**

did knowingly and willfully combine, conspire, and agree with each other and other persons, known and unknown to the Grand Jury:

(a) to export and cause to be exported, from the United States to the PRC, items on the Commerce Control List, 15 C.F.R. Part 774, Supplement Number 1, that is, Graphics Processing Units, without first having obtained a license or other written authorization for such export from the Department of Commerce, in violation of 50 U.S.C. § 4819(a)(1) and (2)(A) and 15 C.F.R. §§ 736.2, 742.6, and 764.2; and

(b) to engage in transactions and take actions with intent to evade the provisions of the Export Control Reform Act and the Export

Administration Regulations, in violation of 50 U.S.C. § 4819(a)(1) and (2)(G) and 15 C.F.R. § 764.2.

### C. Manner and Means

22. The manner and means by which the co-conspirators sought to accomplish the objects of the conspiracy included, among others:

    a. It was part of the conspiracy that co-conspirators, including HO, LI, and CHEN, would and did seek to identify customers in the PRC who wanted to purchase NVIDIA GPUs;

    b. It was further part of the conspiracy that co-conspirators in the PRC and elsewhere would and did place orders for NVIDIA GPUs from Janford Realtor LLC and U.S. Company 1, including through HO and CHEN;

    c. It was further part of the conspiracy that co-conspirators, including HO, would and did purchase NVIDIA GPUs from vendors, including RAYMOND and U.S. Company 1;

    d. It was further part of the conspiracy that co-conspirators would and did send money via wire transfer from the PRC and elsewhere, including from bank accounts belonging to Chinese Company 1 and Chinese Company 2, to co-conspirators in the United States to purchase NVIDIA GPUs;

    e. It was further part of the conspiracy that co-conspirators, including HO and RAYMOND, would and did cause freight forwarders to ship NVIDIA GPUs to third countries, knowing that the GPUs were ultimately destined for and would be transshipped to the PRC;

   f. It was further part of the conspiracy that co-conspirators, including HO and RAYMOND, would and did submit Shipper's Letters of Instructions containing false and fraudulent information, including false information about the ultimate consignee of the NVIDIA GPUs, the value of the GPUs, and the licenses required for their export, which caused shipping companies to file EEIs containing the same false information;

   g. It was further part of the conspiracy that co-conspirators would and did pay "kickbacks" or commissions to each other for the sale and export of NVIDIA GPUs to the PRC;

   h. It was further part of the conspiracy that co-conspirators, including HO, would and did create fake contracts and other documentation that—by creating fictitious and false purported end uses for the NVIDIA GPUs in Malaysia and Thailand—were intended to evade the operative export controls and license requirements for exporting NVIDIA GPUs to the PRC;

   i. It was further part of the conspiracy that co-conspirators, including HO, RAYMOND, LI, and CHEN, would and did discuss ways to evade United States export laws and regulations, including by transshipping NVIDIA GPUs to the PRC through third countries, concealing the source of payment from the GPU suppliers, and creating fake documentation;

   j. It was further part of the conspiracy that co-conspirators, including HO, LI, and CHEN, would and did communicate with co-conspirators in

Malaysia, Thailand, and the PRC in order to facilitate the transshipment of NVIDIA GPUs exported from the United States to the PRC;

k.  It was further part of the conspiracy that co-conspirators would and did facilitate the transshipment of NVIDIA GPUs exported from the United States to the PRC through third countries;

l.  It was further part of the conspiracy that co-conspirators would and did employ various techniques to protect their anonymity and to thwart detection of their activities by United States government and law-enforcement agencies; and

m.  It was further part of the conspiracy that co-conspirators would and did perform acts and make statements to misrepresent, hide, and conceal, and cause to be misrepresented, hidden, and concealed, the purpose of the conspiracy and the acts committed in furtherance thereof.

All in violation of 50 U.S.C. § 4819.

### COUNTS 2 to 5
(Violations of the Export Control Reform Act of 2018)
(50 U.S.C. § 4819)

1.  The allegations in paragraphs 1 through 20 of Count 1 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.  On or about the date specified in each count below, in the Middle District of Florida and elsewhere, the defendants as specified in each count below, aided and abetted by each other and by others known and unknown to the Grand

Jury, did willfully export and cause to be exported, and attempt to export and cause to be exported, from the United States to the PRC, items on the Commerce Control List, 15 C.F.R. Part 774, Supplement Number 1, that is, Graphics Processing Units, without first having obtained a license or other written authorization for such export from the Department of Commerce:

| Ct. | Defendants | Approx. Date Range | Description of Export | ECCN |
|---|---|---|---|---|
| 2 | HON NING HO, a/k/a "Mathew Ho," CHAM LI, a/k/a "Tony Li," and JING CHEN, a/k/a "Harry Chen" | October 25, 2024, to December 6, 2024 | Export of approx. 150 NVIDIA A100 GPUs from the United States to the PRC, transshipped through Malaysia | 4A090.a |
| 3 | HON NING HO, a/k/a "Mathew Ho" | January 13, 2025, to January 25, 2025 | Export of approx. 250 NVIDIA A100 GPUs from the United States to the PRC, transshipped through Malaysia | 4A090.a |
| 4 | HON NING HO, a/k/a "Mathew Ho," and BRIAN CURTIS RAYMOND | January 2025, to July 31, 2025 | Attempted export of approx. 50 NVIDIA H200 GPUs from the United States to the PRC, transshipped through Thailand | 4A090.a |
| 5 | HON NING HO, a/k/a "Mathew Ho," and BRIAN CURTIS RAYMOND | March 2025 to May 15, 2025 | Attempted export of approx. 10 Hewlett Packard Enterprises supercomputers containing NVIDIA H100 GPUs from the United States to the PRC, transshipped through Thailand | 4A090.a |

In violation of 50 U.S.C. § 4819 and 15 C.F.R. §§ 736.2, 742.6, and 764.2.

## COUNTS 6 TO 8
(Smuggling Goods from the United States)
(18 U.S.C. § 554)

1.      The allegations in paragraphs 1 through 20 of Count 1 of this Indictment are hereby realleged and incorporated by reference as though fully set forth herein.

2.      On or about the date specified in each Count below, in the Middle District of Florida and elsewhere, the defendants specified in each count below, aided and abetted by each other and by others known and unknown to the Grand Jury, did fraudulently and knowingly export and send from the United States, and attempt to export and send from the United States, merchandise, articles, and objects as specified in each count below, contrary to a law and regulation of the United States, specifically, 13 U.S.C. § 305 and 15 C.F.R. Part 30:

| Ct. | Defendants | Approx. Date Range | Description of Export |
|---|---|---|---|
| 6 | HON NING HO, a/k/a "Mathew Ho," CHAM LI, a/k/a "Tony Li," and JING CHEN, a/k/a "Harry Chen" | October 25, 2024, to December 6, 2024 | Export of approx. 150 NVIDIA A100 GPUs from the United States to the PRC, transshipped through Malaysia, with EEI containing false information, including false information about the ultimate consignee, country of ultimate destination, and license requirement |
| 7 | HON NING HO, a/k/a "Mathew Ho" | January 13, 2025, to January 25, 2025 | Export of approx. 250 NVIDIA A100 GPUs from the United States to the PRC, transshipped through Malaysia, with EEI containing false information, including false information about the ultimate consignee, country of ultimate destination, and license requirement |

| | | | |
|---|---|---|---|
| 8 | HON NING HO, a/k/a "Mathew Ho," and BRIAN CURTIS RAYMOND | January 2025, to July 31, 2025 | Attempted export of approx. 50 NVIDIA H200 GPUs from the United States to the PRC, transshipped through Thailand, with EEI containing false information, including false information about the ultimate consignee and country of ultimate destination, and license requirement |

In violation of 18 U.S.C. §§ 554(a) and 2.

## COUNT 9
(Conspiracy to Commit Money Laundering)
(18 U.S.C. § 1956(h))

### A.   Introduction

1.   The allegations contained in Counts 1 through 8 of this Indictment are hereby realleged and incorporated by reference as though fully set forth herein.

### B. The Conspiracy

2.   Beginning in or around September of 2023, and continuing until the date of this Indictment, in the Middle District of Florida, and elsewhere, the defendants,

**HON NING HO,
a/k/a "Mathew Ho,"
BRIAN CURTIS RAYMOND,
CHAM LI,
a/k/a "Tony Li," and
JING CHEN,
a/k/a "Harry Chen,"**

did knowingly and voluntarily combine, conspire, and agree with other persons, known and unknown to the Grand Jury, to transmit and transfer funds, that is,

13

United States currency held in bank accounts, from a place outside the United States, that is, the PRC, to a place in the United States, that is, Florida and Alabama, with the intent to promote the carrying on of specified unlawful activity, that is, smuggling, in violation of 18 U.S.C. § 554, in violation of 18 U.S.C. § 1956(a)(2).

### C. Manner and Means

3. Paragraphs 22(a) through (m) of Count 1 of this Indictment are hereby realleged and incorporated by reference as though fully set forth herein.

All in violation of 18 U.S.C. § 1956(h).

### COUNTS 10 to 18
(Money Laundering)
(18 U.S.C. § 1956(a)(2))

1. The allegations contained in Counts 1 through 9 of this Indictment are hereby realleged and incorporated by reference as though fully set forth herein.

2. On the dates specified in each count below, in the Middle District of Florida and elsewhere, the defendant specified in each count below, aided and abetted by others known and unknown to the Grand Jury, transmitted and transferred funds, that is, United States currency held in bank accounts, from a place outside the United States, that is, the PRC, to a place in the United States, that is, Florida and Alabama, with the intent to promote the carrying on of specified unlawful activity, that is, smuggling, in violation of 18 U.S.C. § 554, as specified in each count below:

| Ct. | Defendants | Date | Financial Transaction |
|---|---|---|---|
| 10 | HON NING HO, a/k/a "Mathew Ho" | November 20, 2024 | Wire transfer in the amount of approx. $237,248 from a bank account belonging to Chinese Company 1 to a Bank of America account belonging to Janford Realtor |
| 11 | HON NING HO, a/k/a "Mathew Ho" | January 16, 2025 | Wire transfer in the amount of approx. $400,308.92 from a bank account belonging to Chinese Company 2 to a Bank of America account belonging to Janford Realtor |
| 12 | HON NING HO, a/k/a "Mathew Ho," and BRIAN CURTIS RAYMOND | March 25, 2025 | Wire transfer in the amount of approx. $249,958.89 from a bank account belonging to Chinese Company 2 to a Bank of America account belonging to U.S. Company 1 |
| 13 | HON NING HO, a/k/a "Mathew Ho," and BRIAN CURTIS RAYMOND | March 27, 2025 | Wire transfer in the amount of approx. $1,150,000.00 from a bank account belonging to Chinese Company 2 to a Bank of America account belonging to U.S. Company 1 |
| 14 | HON NING HO, a/k/a "Mathew Ho," and BRIAN CURTIS RAYMOND | March 28, 2025 | Wire transfer in the amount of approx. $490,000.00 from a bank account belonging to Chinese Company 2 to a Bank of America account belonging to U.S. Company 1 |
| 15 | HON NING HO, a/k/a "Mathew Ho," and BRIAN CURTIS RAYMOND | April 9, 2025 | Wire transfer in the amount of approx. $545,158.88 from a bank account belonging to Chinese Company 2 to a Bank of America account belonging to Janford Realtor |

| Ct. | Defendants | Date | Financial Transaction |
|---|---|---|---|
| 16 | HON NING HO, a/k/a "Mathew Ho," and BRIAN CURTIS RAYMOND | April 15, 2025 | Wire transfer in the amount of approx. $272,600 from a bank account belonging to Chinese Company 2 to a Bank of America account belonging to Janford Realtor |
| 17 | HON NING HO, a/k/a "Mathew Ho," and BRIAN CURTIS RAYMOND | April 17, 2025 | Wire transfer in the amount of approx. $272,600 from a bank account belonging to Chinese Company 2 to a Bank of America account belonging to Janford Realtor |
| 18 | HON NING HO, a/k/a "Mathew Ho," and BRIAN CURTIS RAYMOND | April 22, 2025 | Wire transfer in the amount of approx. $272,600 from a bank account belonging to Chinese Company 2 to a Bank of America account belonging to Janford Realtor |

In violation of 18 U.S.C. §§ 1956(a)(2) and 2.

## FORFEITURE ALLEGATIONS

1.  The allegations contained in Counts 1 through 18 are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1), 28 U.S.C. § 2461(c), 49 U.S.C. § 80303, and 50 U.S.C. § 4819(d).

2.  Upon a conviction of a violation of 50 U.S.C. § 4819, or a conspiracy to violate 50 U.S.C. § 4819, the defendants shall forfeit to the United States, pursuant to 50 U.S.C. § 4819(d):

   a.  Any property, real or personal, used, in any manner, to commit or facilitate the violation;

  b. Any property, real or personal, constituting or traceable to the gross proceeds taken, obtained, or retained, in connection with or as a result of the violation; and/or

  c. Any property constituting an item or technology that is exported or intended to be exported as a result of the violation.

3. Upon conviction of a violation of 18 U.S.C. § 554, or a conspiracy to violate 18 U.S.C. § 554, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

4. Upon conviction of conspiracy to violate or violation of 18 U.S.C. § 1956, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in the offense or traceable to such property.

5. The property to be forfeited includes, but is not limited to, fifty (50) NVIDIA H200 GPUs, that are in the custody of Homeland Security Investigations in Tampa, Florida.

6. If any of the property described above, as a result of any act or omission of the defendants:

  a. cannot be located upon the exercise of due diligence;

  b. has been transferred or sold to, or deposited with, a third party;

  c. has been placed beyond the jurisdiction of the court;

  d. has been substantially diminished in value; or

17

    e.    has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c) and 18 U.S.C. § 982(b)(1).

A TRUE B███

_____
Foreperson

GREGORY W. KEHOE  
United States Attorney

By: _____  
Daniel M. Baeza  
Assistant United States Attorney  
Chief, National Security and  
International Narcotics Section

By: _____  
Joseph K. Ruddy  
Assistant United States Attorney

By: _____  
Lindsey N. Schmidt  
Assistant United States Attorney

JOHN EISENBERG  
Assistant Attorney General  
National Security Division

By: _____  
Menno Goedman  
Trial Attorney  
Counterintelligence and Export  
Control Section

FORM OBD-34
November 25

No.

# UNITED STATES DISTRICT COURT
## Middle District of Florida
### Tampa Division

THE UNITED STATES OF AMERICA

vs.

HON NING HO, ET AL.

## INDICTMENT

Violations:  50 U.S.C. § 4819; 18 U.S.C. § 554
18 U.S.C. § 1956(h); 18 U.S.C. § 1956(a)(2)

A true bill,

███████████

_____
Foreperson

Filed in open court this 13th day

of November, 2025.

_R. Meuse_ (signature)
_____
Clerk—Karina Nieves

Bail $_____

GPO 863 525